13690

STATON v. BELL

(170 S. E., 666)

*Messrs. L. G. Southard* and *Nicholls, Wyche & Russell,* for appellant,

*Messrs. I. A. Phifer* and *Lyles & Daniel,* for respondent,

September 11, 1933.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action by B. D. Staton, as plaintiff, against the defendant, J. W. Bell, was commenced in the Court of Common Pleas for Spartanburg County, November, 1930, for recovery of actual and punitive damages on account of alleged "unlawful" trespass by the defendant, through his duly appointed agent, F. H. Johnson; it being alleged that the said agent unlawfully entered the home of the plaintiff in the plaintiff's absence and over the protest of the plaintiff's wife, who, according to the allegations and contention of the plaintiff, was, in the plaintiff's absence, in charge of said home for and in his behalf. Under his answer, the defendant, in the first place, interposed a general denial and demanded strict proof of the plaintiff's allegations. Further answering the complaint, the defendant, while stating, in substance, that he appointed the said F. H. Johnson, a magistrate's constable, to go and serve a distress warrant for past-due rent on the household goods of Mr. and Mrs. Chambers, who had and occupied a room or rooms in the same building occupied by the plaintiff, in the City of Spartanburg, said county, denied that the said agent committed

any acts of wrong against the plaintiff or any one under his care or any one occupying the said building, but, on the other hand, alleges, in serving the said distress warrant on the household goods of the said Mr. and Mrs. Chambers, "that each and every act of F. H. Johnson's was peaceful, quiet, and gentlemanly, and so far as he was concerned, was unattended with any noise, boisterousness, or otherwise, and he merely listed the articles of furniture so that this defendant could enforce his lien for past due house rent." Further answering the plaintiff's allegations, in effect, that the said F. H. Johnson entered the said home over the protest of the plaintiff's wife and committed unlawful acts therein, causing the said Mrs. Chambers and, also, the wife of the plaintiff to become frightened and thereafter, as a result thereof, become ill and suffer therefrom, the defendant not only denied the said allegations but made the following pertinent allegations: "That if, by any act of F. H. Johnson, he was in any wise boisterous, pressing, unkind, or ungentlemanly, the same was contrary to the whole life conduct of said F. H. Johnson, and he denies that there was any such act which would cause this plaintiff any damages whatsoever, or mental suffering, but if there was such an act, *then he disaffirms and disavows the same."* (Italics ours.)

The defendant also served notice of motion for an order striking from the complaint certain allegations upon the ground that the same were redundant and irrelevant, to which motion we shall hereinafter advert.

Issues being joined, the case was tried at the September, 1931, term of said Court, before his Honor, Judge W. H. Grimball, and a jury, resulting in a verdict for the plaintiff in the sum of $1,500.00 actual damages and $500.00 punitive damages. From the said verdict and judgment thereon the defendant has appealed to this Court. The allegations of error imputed to the trial Judge by the appellant are presented under twenty-three exceptions, but the appellant states

in his brief prepared for this Court that the questions involved are as follows: .

"1. Was there error in refusal of the presiding Judge to grant motion for nonsuit and to direct a verdict for the defendant?

"2. Did the presiding Judge err in refusing to strike from the complaint certain irrelevant or redundant matter?

"3. Was there error in the charge of the presiding Judge (a) upon erroneous statement of the law; (b) was the charge on the facts?"

As to the first question presented, imputing error to the trial Judge in refusing to grant defendant's motions for a nonsuit and direction of a verdict, based, in the main, upon the ground that there was no testimony to be submitted to the jury which tended to show an unlawful trespass, the same must be answered against appellant's contention. Since under our view of the case there will have to be a new trial, we shall not discuss the testimony, but deem it sufficient to state that upon due consideration of the same we are of the opinion that it was the duty of the trial Judge to submit the issues to the jury and that his Honor committed no error in refusing the motions.

The second question above stated, presented by appellant, must also be answered against appellant's position. While, in the main, the allegations contained in the complaint with reference to the injuries alleged to have been suffered by the said Mr. and Mrs. Chambers and Mrs. Staton, for the purposes of this suit, clearly constituted irrelevant and redundant matter and could have been stricken out by the trial Judge, it was, under the recognized practice in this State, largely a matter of discretion on the part of the trial Judge whether he would grant the motion and undertake to separate the improper allegations from the proper allegations or refuse the motion and rule on the same on the presentation of the testimony bearing on such allegations. In this connection we call attention to the fact that

while it appears that the notice of the motion to strike out called for a hearing before Judge Ramage, the motion was actually heard by the trial Judge, his Honor, Judge Grimball, when the case was called for trial. No error is imputed to the trial Judge regarding the admission of testimony, and a reading of the record in the case fails to disclose any objection on the part of the defendant when testimony was offered to establish these allegations. Having failed to make objection, it was not incumbent upon the trial Judge to rule on the improper testimony. Therefore, the defendant is presumed to have waived objection to the same, and the exceptions presented to this Court, imputing error to the trial Judge for refusing to grant the motion to strike out, are of no avail to the defendant and the same must be overruled; the defendant having failed to interpose objection to testimony offered by the plaintiff to establish the alleged redundant and irrelevant allegations.

In answering the third question above stated, raised by appellant, we call attention to the following charge of the trial Judge, on account of which error is imputed to his Honor:

"Now, gentlemen, with those rules of law, the question for you to determine is: Did Mr. Frank Johnson trespass in that house, was he a trespasser under those rules of law? If he was a trespasser, the plaintiff would be entitled to a verdict, and the plaintiff must satisfy you by the greater weight of the evidence that Mr. Frank Johnson was a trespasser, and if you can't decide whether or not Mr. Frank Johnson was a trespasser, why the defendant would be entitled to a verdict; if the plaintiff hasn't satisfied you by the greater weight of the evidence the plaintiff is not entitled to a verdict.

"Now, if you are satisfied by the greater weight of the evidence that Mr. Frank Johnson was a trespasser, the law would presume damage, the law would presume what is known as actual damages, whether the amount be small or

whether the amount be large, even if it only be what the law calls nominal damages, one cent, one dollar. If there is a trespass and you are satisfied of that by the greater weight of the evidence, the plaintiff would be entitled to some actual damage, whether it be nominal or whether it be larger, and such actual damages as in your good, hard common sense the plaintiff would be entitled to, if he has satisfied you by the greater weight of the evidence there has been a trespass.

"Now, the plaintiff goes one step further than that, the plaintiff alleges that the trespass was unlawful, highhanded, willful, and wanton, and in case there be that kind of a trespass, the plaintiff in such case would be entitled to what is known as punitive damages. Now, the law never presumes that anyone acts unlawfully, or highhandedly, willfully or wantonly, in the eyes of the law people act just the opposite of that, act lawfully, and with the proper regard for the rights of others, and if some other is acting highhandedly and willfully, and wantonly, that person has got to prove those things, and that person has the same burden of proof of producing the greater weight of the evidence to prove what he alleges, highhandedness, unlawfulness, willfulness, and wantonness. If you be satisfied by the greater weight of the evidence that Mr. Frank Johnson acted unlawfully, highhanded, in willful disregard of the rights of others, in such case the plaintiff would be entitled to punitive damages; if you are not satisfied of that by the greater weight of the evidence, or if you can't decide whether or not he acted that way, the defendant would be entitled to a verdict as to punitive damages, and the plaintiff would not be entitled to a verdict of punitive damages."

From a reading of this portion of his Honor's charge, which was given at the close of the charge and, therefore, impressed upon the jury, it will be observed that no mention is made of the necessity of the plaintiff proving that the said Frank Johnson was an agent of the defendant *and acting within the scope of his agency*

when he committed the alleged wrongful acts against the plaintiff, in order for the plaintiff to recover in this action. In this connection we call attention to the fact that Frank Johnson was not general agent for the defendant but was appointed as a special agent. The defendant, in his answer, stated, in effect, that he appointed Frank Johnson, a constable, for the purpose of serving a distress warrant upon the household goods of Mr. and Mrs. Chambers, which had been in the defendant's house and over which he (the defendant), had a lien for past-due rent, but the defendant does not admit that Johnson was his general agent, nor does he admit that Johnson was appointed to serve a distress warrant or any other paper whatsoever upon the plaintiff or his wife or to do any other act against them. The authority to serve a distress warrant on Mr. and Mrs. Chambers, for the purpose above stated, was not authority to commit any act against the plaintiff. As we view the case, in order for the plaintiff to recover against the defendant in this action, it was incumbent upon the plaintiff to show either that the said Frank Johnson was acting in the capacity of general agent of the defendant or that he had been appointed by the defendant to serve some paper or to do some act against the plaintiff, and that the said Frank Johnson was, at the time of doing such act against the plaintiff, acting within the scope of his agency, or that the acts complained of by the plaintiff were incidental to the service of the said distress warrant upon Mr. and Mrs. Chambers by the said Frank Johnson, while acting within the scope of his agency. Further, while, as stated, the defendant admitted having appointed Frank Johnson to serve the distress warrant upon Mr. and Mrs. Chambers, he did not admit that all of the acts alleged to have been committed by Frank Johnson were committed by the said alleged agent, and, further, the defendant denied that he authorized the same. In this connection the defendant, in his answer, made this statement: "And he denies that there was any such act which would cause the

plaintiff any damages whatsoever, or mental suffering but if there was such an act, *then he disaffirms and disavows the same.*" (Italics ours.) Under any view, it is our opinion that a question of fact was raised as to what authority, if any, the said Frank Johnson had with regard to acting with or toward the plaintiff, under the alleged agency appointment. It may be contended that one inference to be drawn from the testimony in the case is that the alleged acts of the said Frank Johnson against the plaintiff were incident to or a result of the service of the said distress warrant upon Mr. and Mrs. Chambers. But if this be granted, it must be conceded that a jury question is presented. It is for the jury to say what inference should be drawn under the facts and circumstances; and it is for the jury to say whether such alleged acts committed by the said Frank Johnson against the plaintiff were committed in the scope of his agency.

In our opinion, the trial Judge should have modified his charge by making it clear to the jury that in order for the plaintiff to be able to recover against the defendant in this action, on account of the alleged wrongful acts of the said Frank Johnson, it was incumbent upon the plaintiff to not only prove that the alleged wrongful acts were committed by him, the said Frank Johnson, against the plaintiff, but that the same were committed within the scope of his agency, as agent of the defendant. In this connection we call attention to the opinion written by Chief Justice McIver as the organ of the Court in the case of *Rucker v. Smoke,* 37 S. C., 377, 16 S. E., 40, 41, 34 Am. St. Rep., 758, and authorities therein cited. In discussing the question involved, and in referring to the charge of the Circuit Judge on the trial of that case, this Court approved the following statement of the law made by the Circuit Judge: "* * * the maximum of the law is, that whatever is done by the agent of another is done by the principal, *if done within the scope of his agency.*" Also, the following portion of the charge of the Circuit Judge in the said case of *Rucker v.*

*Smoke:* "Whatever of wrongdoing Smoke was guilty of, his principal, Mr. Buyck, would be responsible for—*that is, if it was done within the scope of his agency.*" The case of *Rucker v. Smoke, supra,* has often been cited by this Court, but in each instance it has been with approval.

For the reasons stated we think the defendant should have a new trial. In this connection we wish to state that under our view of the case it was not incumbent upon the defendant to call this error to the attention of the trial Judge at the time.

The judgment of the lower Court is therefore reversed, and the case remanded for a new trial.

MR. JUSTICE BONHAM concurs.

MR. CHIEF JUSTICE BLEASE concurs in result.

MR. JUSTICE STABLER did not participate.