17038

J. H. ELLEN, JR., DAVID M. ELLEN, JR., and WILLIAM M. ELLEN, Respondents, v. A. L. KING and ST. PAUL-MERCURY INDEMNITY COMPANY, Appellants

(88 S. E. (2d) 598)

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, for *Appellant, St. Paul-Mercury Indemnity Co.,* and *Messrs. J. B. Gibson and Hawkins & Bethea,* of Dillon, *for Appellant, A. L. King,*

*Messrs. Herbert Britt,* of Dillon, *Henry C. Jennings,* of *Bishopville,* and *James P. Mozingo, III,* and *John L. Net-*

*tles,* of Darlington, *for Respondents,*

July 25, 1955.

LEGGE, Justice.

This is an action against a building contractor and the surety on his payment and performance bond; and the appeal by the defendants is from an order of Judge Lewis dated September 19, 1953, refusing their motions to require the complaint to be made more definite and certain and to strike certain allegations thereof, and also from an order of Judge Brailsford dated February 10, 1954, refusing their motion to require the plaintiffs to appear for pre-trial examination by the defendants, and their motion to join an additional defendant.

Plaintiffs alleged in their complaint that on July 31, 1950, they entered into a contract with the defendant King whereby he agreed to construct a store building for them for the sum of $49,968.75 in accordance with plans and specifications signed by them and him; and that pursuant to his agreement to furnish a payment and performance bond in a sum equal to the contract price, the defendant St. Paul-Mercury Indemnity Company issued under even date with the contract its bond conditioned to indemnify plaintiffs against all loss that they might sustain should King fail to comply with all of the terms of his contract. The contract, plans and specifications, and contractor's bond are incorporated in the complaint by reference to copies attached thereto and served therewith. These exhibits are not reproduced in the transcript of record. As the motions to strike involved some, and the motion to make more definite and certain involved all, of the paragraphs of the complaint except the

first four, it will be necessary to refer to them in some detail. In this connection we note that two of the paragraphs are numbered 5; and to avoid confusion we shall refer to the first as number 5 and to the second as number 5-a. Following are, in substance, the allegations of the paragraphs in question:

5. That King failed to perform his contract in accordance with the plans and specifications, in the following particulars:

(1) Did not finish the construction within 120 days from August 2, 1950, resulting in damage to the plaintiffs in the sum of $1,125.00;

(2) Failed to pay nine bills, which are separately stated, and which aggregated $2,095.71;

(3) Failed to properly install with the air conditioning system an automatic compensating starter in accordance with the contract "and as recommended by Carolina Power & Light Company and the City Engineer of the City of Dillon."

(4) Failed to properly install the heating and air conditioning system and equipment, in the following particulars:

(a) Failing to supply the unloader with compressors;

(b) Instead of the air handling unit called for in the specifications, installed a Worthington unit without by-pass section, without filter box and assembly, without spray type humidifier, and without face and by-pass dampers—the system so installed having required the expenditure of large sums for repairs, and being practically worthless;

(c) Failing to supply the boiler and hot water coil and circulator called for in the specifications;

(d) Failing to install the type of thermostats required by the specifications; and

(e) Failing to properly service the equipment as provided in the contract.

(5) Failed to install adequate drains, gutters and downspouts and connections to storm sewers, whereby plaintiffs had to install additional downspouts and sewer connections;

(6) Failed to properly cap the top of the front wall, which resulted in water seepage to the plaintiffs' damage $100.00;

(7) Improperly installed the roof by failing to place under it adequate supports and braces in accordance with the contract "and as was reasonably necessary for the proper installation of said roof, resulting in damage to the plaintiffs in the sum of $4,000.00";

(8) Improperly installed the metal and glass structure, resulting in damage to the plaintiffs in the amount of $3,200.00;

(9) Failed to install cornices in accordance with the contract, resulting in a cost to the plaintiffs of $1,500.00;

(10) Failed to properly install panelling on the columns of the building;

(11) Failed to clean mortar from the face of the brickwork after completion; and

(12) In the erection of the walls, failed to use the type and quality of brick required by the contract.

5-a. That in addition to the foregoing, a crack approximately 90 feet long has developed in the front wall of the building, due to improper construction.

6. That in March, 1951, because of the failure to install proper gutters, drains, downspouts and connections, the store building was flooded with water to a depth of six inches or more, causing damage to the building and contents that plaintiffs had to bear, in the sum of $1,869.65.

7. That in addition, because of King's failure to perform his contract, plaintiffs have been put to considerable expense "and inconvenience and have been forced to expend considerable time" and money in completing said building and trying to correct the errors made in the construction thereof.

8. That by reason of the facts before alleged, plaintiffs have been damaged in the sum of $40,000.00.

The defendants moved "upon the complaint * * * and the exhibits thereto attached" to strike the following allegations from the complaint as irrelevant, immaterial and redundant:

1. Sub-sections (2), (5) and (10) of paragraph 5 and the above-quoted portions of sub-sections (3) and (7) of the same paragraph;

2. Paragraph 6; and

3. The above-quoted portion of paragraph 7.

Judge Lewis granted the motion to strike the above-quoted portion of sub-section (3) of paragraph 5, but refused it as to the other items, saying: "This action is based upon a rather lengthy contract and specifications, and some of the matters sought to be stricken may not fall within the terms of the contract. However, the court at this time is not in position to determine with exactness whether the matters sought to be stricken are relevant or irrelevant. I feel that in the light of the testimony taken at the trial, these questions can be passed upon with a greater degree of accuracy. I am, therefore, refusing the motion to strike the other allegations without prejudice to the defendant to renew his position at the trial."

The motion to strike was addressed to the discretion of the Circuit Judge. *Mikell v. McCreery-Pressley Co.,* 105 S. C. 52, 89 S. E. 467; *Staton v. Bell,* 170 S. C. 395, 170 S. E. 666. No abuse of discretion has been shown here.

The defendants' motion to require the complaint to be made more definite and certain contained 28 specifications and attacked every paragraph of the complaint except the first four. The particulars in which it sought to have the complaint made more definite and certain were:

(1) As to paragraph 5(1):

(a) The number of days that the defendant King delayed completion of the building beyond the 120-day period;

(b) What loss of rent plaintiffs sustained;

(c) The items making up the damage of $1,125.00 claimed.

(2) As to paragraph 5(3):

In what manner King failed to properly install the automatic compensating starter.

(3) As to paragraph 5(4) (b):

(a) An itemized statement of the large sums expended by plaintiffs;

(b) Why the air conditioning system is practically worthless.

(4) As to paragraph 5(6):

(a) How, when, why and in what items plaintiffs were damaged by water seepage to the amount of $100.00;

(b) Whether plaintiffs have paid out said amount in whole or in part.

(5) As to paragraph 5(7):

(a) To what extent King failed to place adequate supports and braces under the roof, and to what extent and how the contract between the parties was not complied with in that regard;

(b) Itemization of the damages claimed in this sub-section.

(6) As to paragraph 5(8):

(a) In what manner the metal and glass structure was improperly installed;

(b) Itemization of the damages claimed in this sub-section;

(c) What amount plaintiffs have paid for proper installation of the metal and glass structure.

(7) As to paragraph 5(9):

(a) Itemization of the $1,500.00 damages alleged because of King's failure to install cornices;

(b) Whether plaintiffs have paid for proper installation of the cornices, and if so, who did the work;

(c) In what manner King failed to properly install the cornices.

(8) As to paragraph 5(10):

(a) In what manner the panelling on the columns was improperly installed;

(b) Itemization of the amount, if any, paid for proper installation of the panelling.

(9) As to paragraph 5(11):

(a) Whether plaintiffs have caused the mortar to be cleaned from the face of the brickwork;

(b) If so, how much they paid for that purpose;

(c) If not, what amount of damage is claimed in this regard.

(10) Also paragraph 5-a:

(a) What improper construction caused the crack in the front wall;

(b) The amount of damages claimed by reason of such crack.

(11) As to paragraph 6:

(a) Itemization of damage to building resulting from flooding;

(b) The amount paid, and to whom and when, because of flood damage to contents.

(12) As to paragraph 7:

(a) Itemization of the "expense and inconvenience" claimed;

(b) Itemization of the work done and amounts expended in completing the building and in trying to correct construction errors.

(13) As to paragraph 8:

(a) Itemization of the amount of damages claimed, other than the amounts particularly enumerated in the complaint.

Section 10-606 of the 1952 Code of Laws provides that "when the allegations of a pleading are so indefinite or uncertain that the precise nature of the charge or defense is not apparent the court may require the pleading to be made definite and certain by amendment." The granting or refusal of the motion here was discretionary with the trial court, whose action will not be disturbed except upon a showing by appellants that the allegations of the complaint are insufficient to apprise them of the issues that they must answer, and that manifest prejudice will result from affirmance. *Ridgeland Box Mfg. Co. v. Sinclair Refining Co.,* 216 S. C. 20, 56 S. E. (2d) 585.

Where the elements of general damages that the plaintiff claims to have suffered are definitely enumerated in his complaint, it is not necessary that he state the amount claimed for each of such elements. 15 Am. Jur. p. 751; 25 C. J. S., Damages, § 130, page 748. *Cf. Prudence Co. v. Fidelity & Deposit Co. of Maryland,* 297 U. S. 198, 56 S. Ct. 387, 80 L. Ed. 581. Nor is he required to set forth evidentiary matter. *Webber v. Farmers Chevrolet Co.,* 186 S. C. 111, 195 S. E. 139; *Charles v. Texas Co.,* 192 S. C. 82, 5 S. E. (2d) 464; *Athanas v. City of Spartanburg,* 196 S. C. 19, 12 S. E. (2d) 39. Nor will a pleading be required to be made more definite and certain as to matters that appear to be within the knowledge of the moving party or as to which adequate information is in his possession or available to him. *Spurlin v. Colprovia Products Co.,* 185 S. C. 449, 194 S. E. 332.

In their exception relating to the refusal to grant the motion to require the complaint to be made more definite and certain, appellants do not specify which of the many aspects of the motion were erroneously denied, or in what respect error was committed as to any of them in particular. The single exception in that regard simply contends that Judge Lewis erred "in failing to grant the defendants' motion to make the complaint more definite and certain in the particulars referred to in the defendants' motion, upon the ground that the complaint is so indefinite and uncertain in the particulars referred to in the motion that the precise nature of the charges against the defendants is not apparent." Detailed discussion of each of the numerous divisions and subdivisions of the motion is not necessary. We have carefully considered them in their application to the corresponding paragraphs and subparagraphs of the complaint, and in the light of the guiding principles hereinbefore mentioned; and we find no prejudicial error in the refusal of the motion.

Subject to their motions to strike and to require the complaint to be made more definite and certain, the defendants

served separate answers, substantially identical except for the fact that Mr. King's contained a counterclaim, which the answer of the corporate defendant did not, and for the further fact that most of the allegations of the corporate defendant's answer were made upon information and belief. The substance of Mr. King's answer was as follows:

*For a first defense:* Except for admission of the execution of the contract and the bond, a general denial.

*For a second defense:* Before and at the time of entering into the contract, the plaintiffs, knowing that King knew nothing about heating and air conditioning or the installation of such systems, urged him to have the Worthington Heating and Air Conditioning System installed by Strickland's Heating and Air Conditioning, and similar insistence was made by an official of the proposed tenant, B. C. Moore. & Sons, for whom Strickland's had in another store installed a similar system that had proven satisfactory. Accordingly, the defendant King entered into a contract with Strickland's to install the heating and air conditioning system according to the specifications, for $10,335.00; but before any work could be commenced Strickland's went out of business, whereupon defendant, upon the insistence of the plaintiffs and the official of B. C. Moore & Sons, substituted, in the place of Strickland's, Southern Heating and Air Conditioning Co., a concern that handled the Worthington products. At the proper time during construction, Southern Heating and Air Conditioning Co. installed the heating and air conditioning in accordance with the specifications, "so far as the defendant knew", and one or more of the plaintiffs were present and inspected the installation and at no time objected to it as not being installed in accordance with the specifications. After completion of the work, plaintiffs and their tenant went into possession of the building and thereafter complaint was made to defendant on one occasion with respect to the heating and air conditioning, whereupon defendant had Southern Heating and Air Conditioning Company inspect the system and make the necessary cor-

rections. Defendant has paid to Southern Heating and Air Conditioning Company all but $843.00 of the amount due it under its contract with him, and is ready and willing to pay this balance upon receipt of a statement from plaintiffs to the effect that the heating and air conditioning system as installed by said company is in every respect acceptable to plaintiffs.

*For a third defense:* The contract between plaintiffs and defendant provided among other things that the final payment to defendant should be made upon "final completion of the building and its acceptance by the owners and lessees." On or about January 15, 1951, the building having been completed and plaintiffs, through their tenant, having taken possession, plaintiffs accepted the building and paid to the defendant the full balance owing to him under the contract and plaintiffs thereby waived all alleged defects in the building and are precluded from now claiming that it was not properly constructed in accordance with the plans and specifications.

*For a fourth defense:* Plaintiffs are now precluded from claiming that the building was improperly constructed, because at least once each week during the construction one or more of the plaintiffs inspected the building to determine, as they were well able to, whether or not proper materials were being used and proper workmanship employed in the construction; and at no time did plaintiffs make any objection as to either materials or workmanship.

*For a fifth defense:* The boiler called for in the specifications was not installed, but another boiler was installed with plaintiffs' approval.

*For a sixth defense:* Defendant's failure to complete the building within the period of 120 days was due to weather conditions and his inability to obtain steel; and plaintiffs knew of this situation and acquiesced in the delay.

*For a seventh defense:* The exposed brickwork on the front and side of the building is not according to specifica-

tions, but the change in the type of brick was made with plaintiffs' approval and the brick actually used cost more than the brick called for by the specifications.

*For an eighth defense:* Defendant was ready and willing to install the cornices as called for in the contract, but before he was permitted to do so the plaintiffs or their agent or employee attempted to install them without defendant's consent and not in accordance with the contract and specifications; and any expense thus incurred by plaintiffs was not authorized by defendant.

*For a counterclaim:* Subsequent to the making of the original contract, and during the construction of the building, defendant, pursuant to a contract or contracts entered into with plaintiffs, did additional work and furnished additional materials in the construction of the building which plaintiffs accepted and for which they are indebted to defendant in the sum of $2,600.00.

Appellants' motion to bring in Southern Heating and Air Conditioning Company as an additional party defendant was addressed to the discretion of the circuit judge, and we find no error in his refusal to grant the motion. The controversy here involved is between respondents on the one hand and appellants on the other, and its complete determination can be had without bringing in Southern Heating and Air Conditioning Company. *Cf. Simon v. Strock,* 209 S. C. 134, 39 S. E. (2d) 209, 168 A. L. R. 596; *Fouche v. Royal Indemnity Co.,* 212 S. C. 194, 47 S. E. (2d) 209.

There remain for consideration appellants' exceptions, eight in number, charging error on the part of Judge Brailsford in denying their motion for an order requiring respondents "to submit to oral examination under oath, by the defendants' attorneys, as to all matters and things alleged and referred to in the pleadings and other papers in this cause." In this connection appellants contend that under Section 26-503 of the 1952 Code a party is entitled, as a

matter of right, to require his adversary to submit to oral examination prior to trial in the absence of good cause to the contrary shown by the party to be examined, and that the moving party is required to show good cause only when the examination is to be had in a county other than that in which the adversary resides or may be served with summons for his attendance. Such construction of Section 26-503 being irreconcilable with that given in *People's Bank of Hartsville v. Helms,* 140 S. C. 107, 138 S. E. 622; *United States Tire Co. v. Keystone Tire Sales Co.,* 153 S. C. 56, 150 S. E. 347, 66 A. L. R. 1264; *Mahaffey v. Southern Railway Co.,* 175 S. C. 198, 178 S. E. 838, and *Williams v. Southern Life Insurance Co.,* 224 S. C. 415, 79 S. E. (2d) 365, appellants sought and obtained permission to argue against these decisions.

Prior to the amendment of March 1, 1923, XXXIII Stat. at Large, 170, the code section relating to examination of an adversary before trial read as follows:

"The examination, instead of being had at the trial, * * * may be had at any time before trial, at the option of the party claiming it, before a Judge of the Court, on a previous notice to the party to be examined, and any other adverse party, of at least five days, unless, for good cause shown, the Judge order otherwise. But the party to be examined shall not be compelled to attend in any other county than that of his residence, or where he may be served with a summons for his attendance."

In *Fox v. Clifton Mfg. Co.,* 122 S. C. 86, 114 S. E. 700, decided in December, 1922, it was held, by a divided court, that under this section a party was entitled, as a matter of right, to examine his adversary before trial without showing any cause or assigning any reason therefor beyond the mere fact that the person sought to be examined was a party to the action.

At the next ensuing session of the General Assembly the code section above quoted was amended by changing the

period after the word "attendance" to a semi-colon, and adding the words " 'Nor unless it be upon the order of a Judge of the Court granted after four days' notice, and upon good and sufficient cause being shown therefor'." Act of March 1, 1923, XXXIII Stat. at Large, 170.

The statute as so amended was first considered by this court in 1926 in the case of *White v. Bankers' National Life Insurance Co.*, 134 S. C. 183, 132 S. E. 171, in which it appears to have been conceded that the effect of the amendment was to deny the right to examine an adversary before trial except upon an order of court granted after four days' notice and a showing of good and sufficient cause therefor. In *People's Bank of Hartsville v. Helms, supra,* decided in 1927, Mr. Justice Cothran, speaking for a unanimous court, expressly so construed it; and to this construction the court has since consistently adhered. *United States Tire Co. v. Keystone Tire Sales Co., supra; Mahaffey v. Southern Railway Co., supra; Williams v. Southern Life Insurance Co., supra.* Appellants' contention here is that the limitations imposed by the 1923 amendment are applicable only to pre-trial examination of an adversary in a county other than that in which he resides or can be served with summons for his attendance. Basic to this contention is the fact that prior to the amendment the last sentence of the section, to which the amendment was added, was concerned only with prohibition of examination elsewhere than in a county where the person sought to be examined resided or could be served. But we do not agree with this reasoning. The limitations imposed by the amendment were no doubt inspired by the decision in *Fox v. Clifton Mfg. Co., supra,* as Mr. Justice Cothran suggested in the *Helms case,* and it seems clear to us that they were intended, as there held, to apply generally to pre-trial examination of the adversary.

In the *Helms case* it was declared that the code provisions for pre-trial examination of an adversary were a convenient substitute for the old bill of discovery in equity, and that the principles applicable to the earlier procedure should

largely regulate examination under the new. Accordingly we have held in and since the *Helms case* that while a party may examine his adversary before trial as to matters material to the examining party's cause of action or defense, the party examined cannot be required to disclose the evidence on which he intends to base his case. Appellant contends for a broader field of examination, and that, since Section 26-510 of the 1952 Code provides that "A party to an action may be examined as a witness at the instance of the adverse party * * * and for that purpose may be compelled in the same manner and subject to the same rules of examination as any other witness to testify, either at the trial or conditionally or upon commission," the pre-trial examination of an adversary under Section 26-503 was intended to be as unrestricted as the examination of any other witness. With this contention we do not agree, preferring to follow the construction announced in *People's Bank of Hartsville v. Helms, supra,* and to which this court has adhered for nearly three decades.

The motion for examination of respondents was addressed to Judge Brailsford's discretion. *Planters Fertilizer & Phosphate Co. v. McCreight,* 187 S. C. 483, 198 S. E. 405; *Williams v. Southern Life Ins. Co., supra.* No abuse of that discretion has been shown.

Respondents in due course moved to dismiss the appeal here upon the ground that none of the four orders concerned is appealable. Our consideration of the appeal on its merits renders disposition of the motion unnecessary.

All exceptions are overruled, and the orders of the lower court are affirmed.

BAKER, C. J., and STUKES, TAYLOR and OXNER, JJ., concur.