12961

BURNETTE v. AUGUSTA COCA COLA BOTTLING CO.

(154 S. E., 645)

366

*Messrs. Williams, Croft & Busbee,* for appellants,

*Messrs. James S. Bussey, Jr.,* and *Hendersons & Salley,* for respondent,

August 14, 1930.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

Tort action, tried in the Court of Common Pleas for Aiken County, before Hon. M. L. Bonham, presiding Judge, and a jury. Verdict and judgment in favor of the defendant, the respondent here; appeal by the plaintiff.

The appellant alleged that the respondent, engaged in the wholesale bottling business, sold a certain bottle of coca-cola to the Seminole Mills store, a retailer, which the appellant purchased for drinking purposes; that the beverage contained some putrid, poisonous, and unwholesome vegetable or animal matter (most probably a bug of some kind, according to the evidence); that appellant drank a portion of the beverage and was made ill thereby; that the injuries received by him were occasioned through "the negligence and carelessness of defendant (respondent) in manufacturing and bottling

said unwholesome and poisonous coca-cola, and in sealing the same up and selling it for human consumption, without first properly inspecting the same. * * *"

The respondent denied bottling the particular bottle of coca-cola, alleged by the appellant to have contained the poisonous matter therein; and alleged that its beverages were manufactured, bottled, and inspected in a proper manner.

The four exceptions of the appellant relate entirely to the charge of the presiding Judge. The whole charge, with the exception of the instructions as to punitive damages, is sustained by our decision in the case of *Tate v. Mauldin,* 157 S. C., 392, 154 S. E., 431, the opinion in which is filed along with the opinion in this case. The charge, with the exception of the instructions relating to punitive damages, will be reported. There is no exception by the appellant as to the trial Judge's direction that the jury could not find punitive damages; so that question is not before us.

Upon the authority of the case mentioned, and the authorities cited therein, the judgment below is affirmed.

MESSRS. JUSTICES COTHRAN and STABLER and MR. ACTING ASSOCIATE JUSTICE SMITH concur.

MR. CHIEF JUSTICE WATTS did not participate.

MR. JUSTICE CARTER (dissenting) : I am unable to agree to the conclusion reached in the leading opinion of this case and, therefore, most respectfully dissent.

According to my view of the case, the case, in the main, is controlled by Section 398. Code of S. C., 1922, Vol. 2. This section, or so much thereof as is pertinent to the issues involved in the appeal, reads as follows:

*"Unlawful to Manufacture or Sell Impure Food or Drugs —Definitions.—*It shall be unlawful for any person to manufacture or sell, or offer for sale, any article of food or drug which is adulterated or misbranded, within the meaning of this Section, and any person who shall violate any of the provisions of this Section, shall be deemed guilty of a mis-

demeanor, and, upon conviction thereof, shall be punished by a fine not exceeding fifty dollars, or by imprisonment not exceeding fifteen days for the first offense, and one hundred dollars, or thirty days imprisonment, for each subsequent offense. * * * The term 'food,' as used herein, shall include all aricles used for food, drink, confectionery, or condiment by man or other animals, whether simple, mixed or compound. That for the purpose of this Section, an article shall be deemed to be adulterated. * * *

"*In the case of food:*

"Fifth. If it contain any added poisonous or other added deleterious ingredient, which may render such article injurious to health: * * *

"Sixth. If it consists in whole or in part of a filthy, decomposed or putrid or animal or vegetable substance. * * *

In commenting on this statute his Honor, the trial Judge, used this language: "We have a statute in this State which makes it a misdemeanor for any person dealing in drinks sold to the public to put or allow through gross negligence any of these things known as deleterious or unsound or putrid. We have a statute that makes such a thing a misdemeanor, but the general law is that one who manufactures or sells an article for public consumption, whether it be food or drink, must use due care to see that such article is fit, safe, and proper for human consumption."

By the use of this language, his Honor, in effect, charged the jury, as I view the charge, that the statute in question made it unlawful for a person dealing in drinks sold to the public to put or allow put into the same, "through gross negligence," deleterious, putrid, or unsound matter, but only when done "through gross negligence." I think the statute makes it unlawful for any person dealing in drinks to allow the same to go on the market for sale containing any deleterious, putrid, or unsound matter regardless of whether it was done "through gross negligence" or not, and I am of the

opinion that by the use of the language referred to the jury got the wrong impression as to the force and effect of the statute and its application to the issues involved.

Furthermore, the violation of this statute constitutes negligence *per se,* and, when evidence was introduced tending to show that the defendant manufactured and put on the market for sale for human consumption the poisonous drink in question, which the plaintiff drank and was made sick as a proximate cause thereof, such testimony was sufficient to take the case to the jury on the question of the alleged negligence charged against the defendant in manufacturing and placing on the market the said poisonous drink, causing the alleged injury to the plaintiff, and it was not incumbent on the plaintiff to show how the plant of the defendant was operated or explain in what manner or under what circumstances the poisonous substance got into the drink in question, or to name any specific act of negligence on the part of the defendant for, as stated, the violation of the statute in question constituted negligence *per se,* and it was for the jury to say whether or not such act or acts caused the alleged injury to the plaintiff as a proximate cause thereof. To make such requirement of the plaintiff, which I think the charge to the jury imports, in my opinion, places a greater burden on the plaintiff than the law contemplates. The plaintiff is not presumed to have access to defendant's bottling plant and cannot be expected to know when or under what circumstances the poisonous substance got into the drink in question, which, according to the testimony, was handed to the plaintiff bottled and under seal. Perhaps, it was not so intended by the trial Judge, but as I view his Honor's charge, considered as a whole, the jury got the impression that it was incumbent on the plaintiff to furnish such information or explanation or name some act of negligence, in order to recover, and failing in this the plaintff could not recover; that proof that the defendant manufactured and put on the market for sale for human consumption the drink in question, which the plain-

tiff testified he drank and which made him sick because of the poisonous substance it contained, was not sufficient, but that some act of negligence must be shown. As stated, it may be that his Honor did not intend to convey this impression, and I know that his Honor meant to be absolutely fair to both litigants, but, taking the charge as a whole, I think the jury got that impression.

I, therefore, think that the judgment should be reversed, and the case remanded for a new trial.