18512

Felix H. RIMER, Respondent, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant

(148 S. E. (2d) 742)

*Messrs. Nelson, Mullins, Grier & Scarborough,* of Columbia, for *Appellant,*

*Messrs. Herbert, Dial & Windham,* of Columbia, *for Respondent,*

*Messrs. Nelson, Mullins, Grier & Scarborough,* of Columbia, *for Appellant, in Reply.*

May 31, 1966.

Legge, Acting Justice.

State Farm Mutual Insurance Company, defendant in this action for damages, appeals from a circuit court order: (1) denying its motion to require the complaint to be made more definite and certain by separately stating matters contained therein which the defendant conceived as constituting separate causes of action; and (2) denying in part its motion to strike certain allegations from said complaint. By agreement of counsel time for answering the complaint was extended, pending final disposition of these motions.

This case is the aftermath of *Layton v. Flowers,* 243 S. C. 421, 134 S. E. (2d) 247, which was an action for damages arising out of an automobile collision caused by the negligence of Flowers in the operation of a 1957 Chevrolet automobile. Flowers defaulted; and Rimer, plaintiff in the present action, intervened and interposed, in bar of the collision lien claimed by Layton under Section 45-551 of the 1962 Code, the plea of bona fide purchaser for value without notice. That plea was overruled by the trial court upon

the authority of *Tate v. Brazier,* 115 S. C. 283, 105 S. E. 413; and Rimer, recognizing that the holding in *Tate* was squarely against his contention, nevertheless appealed, urging that that decision was erroneous and should be overruled. This we declined to do; but we held that in the circumstances revealed by the record before us in Rimer's appeal Layton's statutory lien against the Chevrolet automobile was enforceable only to the extent of $350.00. To quote from the opinion:

"The Chevrolet in question was seized by a credit company and sold in its wrecked condition to a motor company for $350.00, which was its fair market value. After repairing the car, this company sold it to a dealer for $725-.00. Appellant (Rimer) purchased it from this dealer for $970.00. Respondent's (Layton's) judgment is for $949.08. The final question for decision is whether the enforcement of this judgment against the automobile in the hands of an admittedly innocent purchaser for value without notice should be limited to, the value of the automobile at the time the lien arose. If respondent had attached the automobile on the day after the wreck occurred, his statutory lien would have been worth no more than its value of $350.00. Instead, he waited some six months to do so. In the meantime, extensive repairs had been made, which enhanced the value of the automobile and which were, in effect, paid for by an innocent purchaser. To allow respondent the benefit of the enhanced value would reward him for his delay at the expense of an innocent person. We find no impelling reason why this windfall must be awarded respondent and hold that under the peculiar facts of this case respondent's lien may be enforced against the Chevrolet automobile in question only to the extent of $350.00."

In the case now before us, Rimer sues State Farm Mutual Automobile Insurance Company; and the allegations of the complaint pertinent to discussion of the motions with which this appeal is concerned are set forth below, some in condensed form, others verbatim, those to which the motion

to strike was directed being italicized, and the numbering of paragraphs corresponding to that in the complaint.

3. That on March 23, 1962, the plaintiff, an innocent purchaser for value and without notice of any defect of title or any lien thereon, purchased a 1957 Chevrolet automobile, for which he paid $970.00.

4. That unknown to the plaintiff, the said automobile had previously, on January 13, 1962, been in a collision with a car owned by one Layton, to whom the defendant, State Farm Mutual, had issued a liability insurance policy. There was no liability coverage on the 1957 Chevrolet, and its owner was without financial responsibility; and therefore the defendant became liable to its own policy holder, Layton, under the uninsured motorist provision of its policy, and paid to him (Layton) $827.32 of the damages suffered by him in that collision; and to that extent the defendant by, or in anticipation of, assignment or subrogation, undertook to assert the rights of its said policy holder and took over the handling of his claim.

5. That as a result of said collision, and by operation of law, Layton, and subsequently the defendant through him, acquired a lien against the 1957 Chevrolet, which in its wrecked condition after the collision had a value of only $350.00.

6. That the defendant, State Farm Mutual, took control of the handling of Layton's claim for damages in order to protect its own interests; and in so pursuing its own interests did not attach the Chevrolet while it was in a wrecked condition and worth only $350.00.

7. That the defendant delayed for more than six months, until July 26, 1962, enforcement of the collision lien by attachment of the Chevrolet car, which in the meantime had passed through the hands of three other owners, had been repaired and put in good running condition, and finally had been bought for $970.00 by the plaintiff, an innocent purchaser, who had put additional improvements on it, making his total investment therein more than $1,000.00; all of which

the defendant should have foreseen would result from its delay. *But in pursuit of its own selfish purpose and unmindful of plaintiff and his rights as owner of a substantially greater interest in said 1957 Chevrolet car than defendant's said $350.00 lien interest therein (which defendant knew or should have known was the extent of defendant's interest therein), defendant wrongfully set about to recoup for itself the greater amount of damages it anticipated having to pay (and in fact subsequently did pay) to Bradley A. Layton, in the amount of $827.32.*

8. That in said circumstances and by reason of its lien on said Chevrolet car, the defendant, as it well knew or should have known was entitled to recover only $350.00, the value of said car immediately after the collision; *but defendant unlawfully and in violation of plaintiff's rights sought to recover a greater amount as aforesaid, and completely disregarding plaintiff's greater interest in said 1957 Chevrolet car as repaired (he having invested more than $1,000.00 in it as aforesaid) and without making any demand on plaintiff or giving him any opportunity to pay said $350.00, defendant proceeded to have said car attached and taken from plaintiff's possession, and held same for payment of $949.08 or the posting of bond therefor, and refused to accept the sum of $350.00 or the posting of bond therefor for release of said attachment and return of said car to plaintiff; and plaintiff has been greatly damaged thereby.*

9. *That if defendant had given plaintiff an opportunity to do so plaintiff could have arranged payment of said $350.00 without cost to himself (through Motor Credit Company who had repossessed said 1957 Chevrolet car following the collision and had first sold it for $350.00), and as aforesaid such amount was all that defendant was entitled to recover from its said lien at the time it attached said car and took it away from plaintiff. Furthermore, defendant had other proper and legal ways to make recovery of Bradley A. Layton's damages, at least to the extent of said $350.00, and quite probably for the entire amount thereof, by proceed-*

*ing against the parties who dealt with and repaired said 1957 Chevrolet car before it was sold to plaintiff. That defendant's said action in attaching said 1957 Chevrolet car at the time and in the manner that it did was arbitrary, high-handed, wilful, wanton, selfish, and in complete disregard of, and in violation of, plaintiff's property rights.*

10. That thereafter following plaintiff's notice of appeal to the South Carolina Supreme Court as below set out, defendant, in furtherance of its selfish, unlawful and wilful purpose aforesaid, and in the same high-handed, arbitrary manner, and over the known and stated objection of plaintiff, but without his knowledge and without posting the bond required by law to protect plaintiff in such circumstances (1962 S. C. Code Section 7-412), unlawfully, wilfully and in utter violation of plaintiff's rights, sold said 1957 Chevrolet car and applied the proceeds of said sale to its own purposes; and thereby unlawfully, wilfully and in violation of plaintiff's rights, wrongfully converted to defendant's own use property belonging to plaintiff. That the attachment and subsequent sale of said 1957 Chevrolet car by defendant in the unlawful manner and for the purpose aforesaid each independently and both jointly constitute an abuse of legal process which was a direct and proximate cause of damage to plaintiff as aforesaid.

11. *That because of defendant's high-handed selfishness as aforesaid, plaintiff was forced not only to give his personal time and attention to protection of his rights against defendant's unwarranted and unlawful actions, but also was forced to employ legal counsel to represent and protect his interests by interviewing in the legal proceedings which defendant had initiated in carrying out its wilful and unlawful purpose aforesaid,* and plaintiff had to appeal to the South Carolina Supreme Court in order to have defendant prevented from taking more than $350.00 through its said lien on said 1957 Chevrolet car. But despite said appeal and the Supreme Court's prohibition against defendant's recovery of more than $350.00 through its said lien, plaintiff is still deprived

of said car by reason of its unlawful sale as aforesaid; that the defendant in the unlawful manner aforesaid sold said car on July 11, 1963, for only $410.00, which was less than its real value (plaintiff himself would have paid more for it in the circumstances if he had had notice of the sale), and defendant's failure to obtain full value for said car constitutes a conversion by defendant of such excess value of plaintiff's property; and defendant did not pay or even offer to plaintiff the $60.00 of the proceeds of sale in excess of the $350.00 maximum to which defendant was entitled, but instead defendant appropriated said $60.00 of plaintiff's money and applied it to storage costs that defendant had incurred while it wrongfully held said car as aforesaid.

12. That by reason of the defendant's delay in enforcing the collision lien as aforesaid, its unnecessary and unwarranted attachment aforesaid, its wrongful conversion of the proceeds of said sale to its own use as aforesaid, and its abuse of legal process as aforesaid, plaintiff has been deprived of the possession, use, ownership and beneficial interest of, to, and in his property, *has been required to devote his personal time and attention to defense of his rights and interests, and has been put to the expense of employing legal counsel to represent his interest in the trial court and on appeal to the S. C. Supreme Court,* all to his damage, actual and punitive, in the amount of $20,000.00.

The defendant moved for an order requiring the plaintiff to amend his complaint by alleging as separate and distinct causes of action:

1. The alleged delay in enforcing the collision lien, and the damages flowing therefrom;

2. The alleged unnecessary and unwarranted attachment, and the damages flowing therefrom;

3. The alleged unlawful sale of the automobile and the alleged conversion by the defendant of the proceeds of said sale; and

4. The alleged abuse of process by the defendant and the damages resulting therefrom.

The trial judge, denying this motion, construed the complaint as containing a single cause of action for wrongful conversion of the plaintiff's property, and the matters conceived by the motion to be separate causes of action as merely a sequence of alleged negligent or wrongful acts whereby the alleged conversion was accomplished. The plaintiff, not having appealed from this ruling, is bound by and must recover, if at all, upon a cause of action for conversion. Whether the complaint contains allegations appropriate to other causes of action, to be separately stated, is therefore a moot question; and it is unnecessary for us to pass upon the exceptions that raise it.

So much of the motions to strike as was denied by the trial judge was directed to the portions of paragraphs 7, 8, 9, 11 and 12 of the complaint that we have hereinbefore italicized, the motion charging that those allegations were immaterial, prejudicial and irrelevant to any cause of action set forth in the complaint.

A motion to strike language from a pleading is addressed to the sound discretion of the trial judge. *Ellen v. King,* 227 S. C. 481, 88 S. E. (2d) 598; *J. M. S., Inc. v. Theo,* 241 S. C. 394, 128 S. E. (2d) 697; *Sams v. Sams,* S. C., 148 S. E. (2d) 154 (Opinion filed April 26, 1966). His ruling on such motion will therefore not be disturbed on appeal in the absence of a clear showing of prejudicial error.

The motions to strike those portions of paragraphs 7, 8 and 9 of the complaint to which we have referred was addressed to the trial judge's discretion, and we find no prejudicial error in his order denying it.

With reference to the portions of paragraphs 11 and 12 of the complaint to which the motion was directed, we think that the allegations charging that by reason of the defendant's actions the plaintiff was required to devote his personal time and attention to protection of his rights, and was forced to employ counsel to represent and

protect his interests as intervenor in the former litigation, are irrelevant and prejudicial and should have been stricken, and that the trial judge was in error in not doing so.

■ Where the rights, or asserted rights, of parties are in conflict, it is inevitable that each party desiring to protect his rights must give time and attention to that end. To do so is not generally an element of damage, although it may be in some situations where loss of earnings is involved, which is not the case here.

■ Nor do recoverable damages include the expense of employing counsel, except when so provided by contract or statute, which is not the case here. That the counsel fees with which the allegations under discussion are concerned were for services rendered to the plaintiff not in the present case, but in his intervention in *Layton v. Flowers,* is in our opinion immaterial; they are not a proper element of the plaintiff's damages here.

The improper allegations to which we have referred being eliminated, the first sentence of paragraph 11 of the complaint should read as follows:

"That because of defendant's high-handed selfishness as aforesaid, plaintiff had to appeal to the South Carolina Supreme Court in order to have defendant prevented from taking more than three hundred fifty ($350.00) dollars through its said lien on said 1957 Chevrolet car."

And paragraph 12 of the complaint should read as follows:

"That by reason of defendant's delay in enforcing the collision lien as aforesaid, defendant's unnecessary and unwarranted attachment aforesaid, defendant's unlawful sale aforesaid, defendant's wrongful conversion of the proceeds of said sale to defendant's own use as aforesaid, and defendant's abuse of legal process as aforesaid, plaintiff has been deprived by defendant of the possession, use, ownership and beneficial interest of, to, and in his property, all to his damage, actual and punitive, in the amount of twenty thousand ($20,000.00) dollars; and plaintiff is entitled to judg-

ment against defendant in the amount of twenty thousand ($20,000.00) dollars, and the costs of this action."

Except in the particulars before mentioned, the order appealed from is affirmed.

Affirmed in part and reversed in part.

Moss, Acting C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.