20506

Mark HUGHES, a minor under the age of 14 years, by his Guardian ad *Litem,* Judy Hughes, Respondent, v. The CHILDREN'S CLINIC, P. A., Appellant.

(237 S. E. (2d) 753)

*J. D. Todd, Jr.,* and *James H. Watson,* of *Leatherwood, Walker, Todd & Mann,* Greenville, *for Appellant,*

*Danny E. Allen,* of *Swofford, Turnipseed, Allen & Newby,* Spartanburg, *for Respondent,*

September 7, 1977.

RHODES, Justice:

In this appeal we are asked to set aside the verdict rendered for the minor plaintiff, Mark Hughes, for injuries he sustained when he fainted and fell backward into a mirror on the defendant's premises. The defendant maintains that the evidence was insufficient to support the verdict and moved for a directed verdict and for judgment *n.o.v.* These motions were denied by the trial judge. Additionally, the defendant alleges that numerous prejudicial errors occurred during the trial of this case, necessitating a new trial. For the reasons set forth herein, we reverse the judgment with respect only to the defendant's motion for a new trial *nisi* and remand for reconsideration of this issue.

On March 20, 1974, Mrs. Judy Hughes took her son Mark to the office of The Children's Clinic, P. A., Spartanburg pediatricians, for treatment of an infection in Mark's nose and throat. Mark was seven years old at the time of this visit to the defendant's office. As a result of an examination, Dr. Clarence C. Lyles, the examining physician and one of the partners in the defendant association, injected Mark with 600,000 units of CR Bicillin (long acting penicillin). During the course of a conversation between Mrs. Hughes and Dr. Lyles in the treatment room, it was determined that Mark was overdue for a complete physical examination. Consequently, Mrs. Hughes and Mark left the treatment room and went to the receptionist's desk for the purpose of paying their bill and to make an appointment for Mark at a future date.

When Mrs. Hughes and Mark arrived in the receptionist's area, they found one or two mothers at the desk ahead of them and, consequently, took their place in line. Mrs. Hughes was generally facing the receptionist's desk but was momentarily looking to her right at a crying baby in the waiting room. Mark was standing at Mrs. Hughes' left side

and was physically touching her, but he was not holding her hand.

Almost immediately after mother and son had taken their place in line, Mark fainted and fell backward into a mirror which was hung on the wall opposite the receptionist's desk. It was a convex mirror which had been installed on the premises in 1962 after being presented to the defendant association as a gift. It was a typical fun-house mirror, curved outward so as to give the viewer a comically distorted image or reflection of himself.

When Mark's head struck the mirror, the glass shattered. As a result, Mark's left eye and cheek were cut. The testimony of certain of the plaintiff's witnesses showed that the damage to the boy's eye was severe and of a permanent nature.

The plaintiff alleged in his complaint that he received the injuries aforementioned as a result of the negligence of the defendant association in two particulars: (1) because the defendant failed to keep the plaintiff under proper and reasonable supervision and observation following the penicillin injection and that, as a result, the plaintiff fainted on the defendant's premises; and (2) because the defendant had carelessly placed in its office a breakable wall mirror, which constituted an inherently dangerous condition under the circumstances, and that as a result of the plaintiff's fainting and falling into the mirror, it broke and pieces of the shattered glass damaged the plaintiff's eye and cheek.

The answer of the defendant was a general denial of the material allegations of the complaint. Thus, the issues made by the pleadings were whether the defendant was negligent in either or both of the particulars alleged and, if so, whether such negligence was a proximate cause of the plaintiff's injuries.

The case was tried before a jury in Spartanburg at the April 1976 term of the Court of Common Pleas. The jury

returned a verdict for the plaintiff for $75,000 "against the Clinic only". That is, the form of the verdict reflected that liability was attributed to negligence in the installation and maintenance of the mirror on the premises. The defendant association was exonerated of the allegation of lack of adequate care and supervision on the part of the treating physician.

In addition to the motions mentioned above, the defendant, after the verdict was returned, moved for a new trial or a new trial *nisi*. Upon denial of all of these motions, this appeal followed.

## QUESTION 1

Did the placing of the convex wall mirror in the office of the Children's Clinic, P. A., constitute an inherently dangerous condition and foreseeable risk of harm to the plaintiff?

The convex wall mirror involved in this case was made of ordinary double-strength window pane glass, one-eighth (1/8) of an inch thick. It was the type of glass customarily used in china cabinets as found in many homes throughout this country. The glass had been curved outward by a heating process. It was then mirrored with a coating of silver nitrate sprayed on the back of it so that it would produce a reflection. As the plaintiff's glass expert testified, the properties of the glass were changed through the heating process. The heating caused the glass to become more susceptible to breakage because it had been stressed and strained.

After the glass was mirrored, it was placed inside a rectangular oak frame. The mirror in its frame was screwed into the wall directly across from the receptionist's desk in the defendant's office. The mirror was located in an area where sick and weak children passed while going to and returning from the defendant's treatment rooms.

The mirror was intentionally placed on the wall for the purpose of amusing the Clinic's children-patients. The mirror protruded from its oak frame on the wall, and it was

hung only six (6) inches above the floor. The defendant, however, took no precautions after placing the convex mirror in its particular location to protect the children-patients of the Clinic or to warn them or their parents that the mirror could break. The members of the defendant association never examined the mirror to determine whether it was susceptible to easy breakage as they could have done, according to the plaintiff's glass expert.

The plaintiff, through the testimony of his glass expert, the photographic exhibits showing the former location of the mirror, and the pieces of the broken glass, demonstrated to the satisfaction of the jury that the mirror was a dangerous condition under the circumstances. The expert witness testified that the glass of the convex mirror had absolutely no safety factor in it. The mirror, when hung, was located in an area where it could easily have been broken.

Undisputed is the fact that Mark Hughes was an invitee on the defendant's premises. The defendant, therefore, owed the plaintiff the duty of exercising reasonable or ordinary care for his safety and was liable for any injury resulting from the breach of this duty. This degree of care must be commensurate with the particular circumstances involved, including the age and capacity of the invitee. This duty is an active or affirmative duty. It includes refraining from any act which may make the invitee's use of the premises dangerous or result in injury to him. 65 C. J. S. Negligence § 63(45). Moreover, it has been stated that . . .

[I]t is unessential that the *precise* manner in which the injuries might have occurred, or where sustained, be foreseeable, or foreseen. It is sufficient that there is a reasonable generalized gamut of greater than ordinary dangers of injury and that the sustaining of the injury was within this range. . . . It was, therefore, a jury question whether the defendant had provided reasonably safe premises, and a reasonably safe installation upon the premises, for the use of

the child invitee, . . . *Orr v. First National Stores, Inc.,* 280 A. (2d) 785 (Me. 1971), 50 A. L. R. (3d) 1202, 1213. [Emphasis supplied.]

It was certainly foreseeable that the mirror, if shattered or broken by one of the children-patients, could cause severe injury to the child. The evidence shows that the mirror was unsafe and created an unreasonable risk of harm to the defendant's patients, including the plaintiff. The jury was justified in concluding under the particular facts and circumstances of this case that the mirror was an inherently dangerous condition on the defendant's premises.

## QUESTION II

Was the presence of the convex wall mirror on the defendant's premises a proximate cause of the plaintiff's injuries?

With regard to liability for a negligent act, proximate cause is the efficient, or direct, cause—the thing which brings about the injuries complained of. *Burnette v. Augusta Coca-Cola Bottling Co.,* 157 S. C. 359, 154 S. E. 645 (1930). Negligence is not actionable unless it is a proximate cause of the injuries, and it may be deemed a proximate cause only when without such negligence the injury would not have occurred or could have been avoided. *Gunnels v. Roach,* 243 S. C. 248, 133 S. E. (2d) 757 (1963).

When we speak of proximate cause, we are not referring to the "sole cause". In order to establish actionable negligence, the plaintiff is required only to prove that the negligence on the part of the defendant was at least one of the proximate, concurring causes of his injury. It is generally for the jury to say whether the defendant's negligence was a concurring, proximate cause of the plaintiff's injuries. *Grooms v. Minute-Maid,* 4 Cir., 267 F. (2d) 541 (1959).

The presence of the mirror on the premises was not merely a condition involved in the plaintiff's receiving his injuries, as contended by the defendant. The plaintiff's particular injuries would not have resulted except for the maintenance of the mirror on the premises. If the defendant had not breached its duty of reasonable care which it owed to the plaintiff by properly inspecting and taking adequate safeguards to prevent injury resulting from forceful contact with the mirror, the plaintiff would not have been injured as he was. The evidence, therefore, was sufficient to permit the jury to find that the mirror constituted a proximate cause of the plaintiff's injuries.

## QUESTION III

Did the court commit reversible error by instructing the jury of the existence of two legal doctrines?

The defendant complains with respect to the following instructions given by the trial judge:

(1) The occupier of premises has the duty to warn an invitee of latent dangers of which the occupier has actual or constructive notice; and

(2) The occupier must take into account childish impulses and propensities in keeping the premises reasonably safe.

The defendant admits that the trial judge correctly expressed the law of both doctrines when he charged the jury. However, what the defendant contends was error was the fact that either instruction was given at all. The defendant maintains that both instructions were inapplicable, not having been raised by the pleadings or the evidence. Therefore, contends the defendant, the court committed prejudicial error because the jury could have concluded improperly that alternative bases of liability existed in addition to any otherwise proper bases.

With regard to the instruction concerning the "duty to warn", the defendant alleges that there was error because

any danger presented by the mirror was as obvious to the minor plaintiff and his mother as it was to the defendant. Thus, there was no duty to give any notice or warning. Moreover, the testimony shows that Mark Hughes fainted and fell into the mirror. Accordingly, says the defendant, a warning would have been totally ineffectual to prevent Mark's injuries.

First, as noted previously, it is undisputed that Mark was an invitee on the defendant's business premises.

Additionally, we have found, *supra,* that the evidence was sufficient for the jury to conclude that the breakable convex mirror, mounted on the wall in the receptionist's area of the defendant's office, constituted an inherently dangerous condition under the facts and circumstances of this case. The evidence in this case points to the conclusion that the defendant, even if it did not actually know of the inherently dangerous condition of the mirror, should have known of such condition and, therefore, have taken steps to warn its invitees. The general rule applicable to the facts of this case is stated as follows:

[W]here the entrant is deemed to be an invitee, the rule seems to be that the occupier of the premises ordinarily owes him not only the duty not to injure him by unreasonably dangerous conduct while he is upon the premises, but also the affirmative duty to use reasonable care to discover unreasonably dangerous conditions of the premises and either put the premises in a reasonably safe condition for use in a manner consistent with the purpose of invitation or warn him of the danger. 32 A. L. R. (3d) 508, 518.

Even assuming that the defendant is correct in its contention that a warning would have been ineffectual since the danger was comprehensible by the plaintiff and his mother, the trial judge corrected any error which might have existed by instructing the jury further as follows:

But now ladies and gentlemen, the responsibility of the occupants of premises is not an absolute responsibility. He

[*sic*] does not insure your safety, he is not an insurer. He is simply obligated to use reasonable and ordinary care. The occupant, of course, is entitled to assume that any invitee will see and observe these things which are obvious to the ordinary person's senses. And, of course, in regards to these, there is no duty to give any notice or any warning where the danger, of course, is obvious. . . .

This instruction served to cure any error in the instruction immediately preceding it. See *Bruno v. Pendleton Realty Co., Inc.,* 240 S. C. 46, 124 S. E. (2d) 580 (1962). The only inferable conclusion to be drawn from the verdict is that the jury considered the defect on the premises to be a latent one.

With respect to the court's second allegedly erroneous charge (that the jury should consider childish propensities), we note the following facts which are supported by the evidence. The defendant operated a business which was devoted solely to the treatment of children. Hundreds of children passed through the defendant's office every week. The testimony of Dr. Lyles, a partner in the defendant association, was to the effect that over the years children-patients had fainted during and after treatment and that a number of these fainting spells resulted from the giving of injections similar to the plaintiff's. After Dr. Lyles had injected Mark Hughes with 600,000 units of long-acting penicillin, he permitted the boy, after several minutes, to go out into the receptionist's area where the mirror was located and where Mark was likely to come into contact with the mirror. Dr. Lyles stated that it was his opinion that the shot, or the pain therefrom, probably caused Mark to faint.

The defendant could, therefore, reasonably foresee that a child-patient could faint and thereby fall into the mirror and be injured, if the child were in the vicinity of the mirror at the time. Under these facts, fainting, although it may not have occurred often, was, nonetheless, a type of propensity of some of the children-patients on the defendant's premises.

Fainting constituted foreseeable conduct and placed the burden on the defendant to keep the premises free and safe from any inherently or unreasonably dangerous conditions such as the convex wall mirror. Under the facts of this case, the instruction was not prejudicial to the defendant.

## QUESTION IV

Did the court improperly allow the testimony of the plaintiff's expert witness?

During the trial of this case, the plaintiff offered the testimony of Lawrence Oakman, Jr., as an expert in the areas of the properties of glass and the installation of glass and mirrors. The defendant objected numerous times on several grounds to the allowance of the various answers given by Oakman.

Oakman's qualifications to testify were impressive and well-established. He had been in the business of glass installation and sales for approximately twenty-five (25) years. He had been general manager of such a business, a supervisor of glass installation crews, and also had personally performed much of the work of glass installation. He was familiar with the properties of glass and the different types of glass such as single-strength window glass, ordinary double-strength window glass, and plate and automobile glass. He was familiar with the properties of different types of mirror glass and testified that he worked with installing mirrors on a regular basis. He was familiar with the different strength characteristics of mirror glass and had installed mirrors in residential and commercial structures, including doctors' offices. He was familiar with the different safety features of glass and mirrors.

Oakman's testimony dealt with issues which were raised by the plaintiff's second allegation of negligence in his complaint. They concerned complex areas in which the jurors as ordinary laymen had either very little knowledge or no expertise. Oakman's testimony was necessary to aid the

jury in understanding the properties of the glass in the convex mirror and in becoming familiar with the presence or lack of safety features of the mirror and its installation. Such testimony was properly admitted. See 31 Am. Jur. 2d, Expert and Opinion Evidence, § 149.

Even viewing Oakman's testimony concerning the safety qualities of the mirror and its installation as relating to ultimate issues, still we are not able to say that the court committed reversible error in permitting the jury to hear the answers. We have heretofore held that the trial judge may in his discretion permit a qualified expert to testify as to his opinion on the ultimate issue before the jury. This does not constitute an invasion of the province of the jury, because the jury retains the power and duty to judge the credibility of the witness and the weight to be given to his opinion. *Redman v. Ford Motor Co.,* 253 S. C. 266, 170 S. E. (2d) 207 (1969).

## QUESTION V

Did the trial court err in failing to grant the defendant's motion for a new trial *nisi*?

The defendant contends that the court abused its discretion because it considered attorney's fees of forty per cent (40%) of the verdict as a basis for rejecting the defendant's motion for a new trial *nisi*. The defendant argues further that the court erred in denying the motion because the verdict was so grossly excessive as to shock the conscience of the court and as to indicate prejudice, caprice, or passion on the part of the jury.

A consideration of the fact that a substantial portion of the verdict will go to the plaintiff's counsel as a fee cannot, according to the defendant, be considered by the court as a basis for upholding the verdict. We agree with this contention. Such a factor is irrelevant and immaterial to the central question of whether the verdict is excessive. The principle may be gleaned by implication

from our statement in *Rimer v. State Farm Mut. Auto Ins. Co.*, 248 S. C. 18, 148 S. E. (2d) 742 (1966), to the effect that recoverable damages do not include the expense of employing counsel except when so provided by contract or statute, which is not the case here.

From our reading of the trial court's order denying the motion for a new trial *nisi*, it appears that the court did improperly consider attorney's fees. In view of the trial judge's consideration of attorney's fees to be paid by the plaintiff as a factor in determining the excessiveness of the verdict, such consideration being an error of law, it will be necessary to remand the case to the trial judge for reconsideration of that issue.

## QUESTION VI

Did the trial judge err in denying the defendant's motion to strike the *ad damnum* clause of the complaint or, in the alternative, to prohibit its submission to the jury?

Under S. C. Code § 10-632(3), (1962), a complaint shall contain a demand for the relief to which the plaintiff supposes himself entitled. The Bar of this State has traditionally followed the practice of demanding a specific sum as damages in the complaint, and our courts have permitted the *ad damnum* clause to be viewed by and argued to the jury as a part of the pleadings. The practice is not inconsistent with the language of Section 10-632(3).

The defendant cites to us decisions followed by the federal judiciary in support of the proposition that it is unnecessary and perhaps even prejudicial to the defendant for the jury to see or hear the specific amount of damages prayed for. However, nothing cited presents so compelling a rationale that we should deem it necessary to change the practice followed for so long in the courts of this State.

The judgment appealed from is reversed in the one particular indicated above, and the case is remanded to the trial

judge for the purpose of redetermining the issue of a new trial *nisi*. Otherwise the judgment is affirmed.

Affirmed in part; reversed in part; remanded.

LEWIS, C. J., and LITTLEJOHN and GREGORY, JJ., concur.

NESS, J., dissents.

NESS, Justice (dissenting):

I am concerned with the sufficiency of the evidence to support a verdict for the respondent. I conclude that the evidence was insufficient and that a directed verdict should have been entered for the appellant.

It is conceded that the convex mirror had been in place for seven years and that no prior injuries had occurred as a result of this mirror.

The respondent sought to create a basis for an inference that the mirror was defective in that it was not constructed with safety devices, as are mirrors at the present time. Be that as it may, there is no testimony that the appellant had notice of this alleged defect or should reasonably have been aware of it.

A business proprietor is under a duty to use due care to keep in a reasonably safe condition the premises where invitees may be expected to come and go. If there is a dangerous condition, the proprietor must safeguard those who lawfully come upon the premises by warning them of the condition and the risks involved. The basis of liability is his *superior knowledge* over that of business invitees of the dangerous condition. On the other hand, the law does not make the proprietor an absolute insurer against such happenings. It cannot guard against every contingency, and the individual invitee bears some of the risks of the hazards of life inside a business establishment as well as out. The question is, what is a fair division of those risks under the particular circumstances; the common experience and judgment of the community serve as a touchstone for its answer.

There is nothing unique in mirrors in business establishments. Substantial numbers of children and members of the public had passed this particular mirror over the course of seven years, without reported incident.[1] Yet, the majority opinion would make this and every mirror a dangerous object.

This Court has consistently held that a business is not an insurer of the safety of its patrons,[2] and that liability to a business invitee is predicated upon negligence. Negligence is not presumed and the happening of an accident does not establish negligence. The burden is upon the plaintiff to establish negligence and proximate cause. Even viewing the evidence in the light most favorable to respondent and giving him the benefit of all inferences which might reasonably be drawn therefrom, I do not believe that the negligence of appellant was established or that negligence, if present, was the proximate cause of respondent's injuries. *Mullen v. Winn-Dixie Stores, Inc.,* 252 F. (2d) 232 (4th Cir. 1958); *Wimberly v. Winn-Dixie Greenville, Inc.,* 252 S. C. 117, 165 S. E. (2d) 627 (1969); 61 A. L. R. (2d) 129; Prosser on Torts 3d Ed. at 216.

A verdict may not be predicated upon proof of the occurrence and the existence of the hazardous condition which caused it. This is true though the nature of the condition suggests that it had existed for some time. Thus testimony that the respondent fainted and fell into the mirror is insufficient to support a finding that the appellant knew or should have known of the condition of the mirror. Suppose that the respondent's head had struck the edge of a door or a desk in the doctor's office, could it be held that the sharp edge of the door or desk was a dangerous condition about which the respondent should have been forewarned? And if so, what effect would a warning have upon one who faints?

---

[1] It should be noted that the verdict of the jury was against the owner of the building not the physician.

[2] *Baker v. Clark,* 233 S. C. 20, 103 S. E. (2d) 395 (1958); *Wimberly v. Winn-Dixie Greenville, Inc.,* 252 S. C. 117, 165 S. E. (2d) 627 (1969).

In the instant case, the glass did not break and cut the respondent of its own accord; it was caused by the respondent fainting, presumably as a result of a shot administered by the physician who the jury found to be without fault. There is no evidence that the appellant had any knowledge of any alleged defect or weakness in the mirror. There is no proof that the appellant should have anticipated that its tenants would give a young child a shot and, without retaining him for a period of time to insure his stability, send him out in the vicinity of the mirror where he might fall and strike his head.

I think the respondent failed to prove that the appellant knew, or should have known, of the alleged dangerous condition of the mirror in time to have removed it or warned of it. Accordingly, I believe appellant was entitled to a directed verdict and would reverse with direction to vacate the judgment and dismiss the complaint.

Reversed and remanded.