# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Martha M. Fountain and Curtis Fountain, Plaintiffs,

v.

Fred's, Inc. and Wildevco, LLC, Respondents,

v.

Tippins-Polk Construction, Inc. and Rhoad's Excavating Services, LLC, Third-Party Defendants,

of whom Tippins-Polk Construction, Inc. is the Petitioner.

Appellate Case No. 2020-000651

———

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———

Appeal from Barnwell County
Doyet A. Early III, Circuit Court Judge

———

Opinion No. 28086
Heard December 9, 2021 – Filed March 2, 2022

———

## REVERSED

———

Morgan S. Templeton, of Wall Templeton & Haldrup, PA, of Charleston, for Petitioner Tippins-Polk Construction, Inc.

Matthew Clark LaFave, of Crowe LaFave, LLC, of Columbia, for Respondent Fred's, Inc.

Randi Lynn Roberts and Regina Hollins Lewis, both of Gaffney Lewis LLC, of Columbia, for Respondent Wildevco, LLC.

---

**JUSTICE KITTREDGE:** We issued a writ of certiorari to review the court of appeals' decision affirming the trial court's finding that Respondents Fred's, Inc. (Fred's) and Wildevco, LLC (Wildevco) were entitled to equitable indemnification from Petitioner Tippins-Polk Construction, Inc. (Tippins-Polk). Specifically, Tippins-Polk argues the court of appeals erred in finding a special relationship existed between it and Fred's and in finding Respondents proved they were without fault as to the underlying premises liability claim. Because we find Respondents failed to establish they were without fault in the underlying action, we reverse.

## I.

Respondent Fred's was a Tennessee corporation that operated a chain of discount general merchandise stores in several states, including South Carolina. Respondent Wildevco is a South Carolina limited liability company that owned a tract of undeveloped commercial property in Williston, South Carolina. In February 2005, Wildevco and Fred's entered into a lease agreement in which Wildevco agreed to construct a 16,000-square-foot commercial space located in Williston, South Carolina, according to Fred's conceptual design specifications. In turn, Fred's agreed to lease the property for ten years.

Wildevco, and specifically partner Tad Barber, managed the construction process, including hiring engineers, architects, and a general contractor. In April 2005, Wildevco entered into a contract with general contractor Tippins-Polk for the construction of the Fred's store and adjoining strip center. Barber testified at trial that he selected Tippins-Polk as the general contractor primarily because Tippins-Polk offered a "good price" but also because Tippins-Polk had experience constructing other Fred's stores.

The construction contract between Wildevco and Tippins-Polk included drawings prepared by an architect, as well as site plans prepared by an engineer. The contract specifically stated that Tippins-Polk was responsible for "All Site Work," including "[g]rading, concrete curbing, utilities & paving [p]er site plans."

Wildevco provided Tippins-Polk with two sets of construction drawings—the architectural drawings, which established the design elements including the sidewalk surrounding the store, and the site plans, which controlled the grading, elevations, pavement, and underground utilities. However, there was conflicting evidence at trial as to the intended design of the curbing at the entrance of the Fred's store—specifically, whether the architectural drawings and/or site plans called for the presence of a curb ramp for wheelchair accessibility. In any event, Tippins-Polk constructed the entrance to have a curb ramp at the entrance door. In front of the door, the ramp was flush with the parking lot, and on either side, it sloped upward to adjoin the rest of the curbing surrounding the building. Fred's opened the Williston store in October 2005.

Pursuant to the lease agreement between Wildevco and Fred's, Wildevco was the party responsible for "keep[ing] and repair[ing] the exterior of the [] Premises, including the parking lot, parking lot lights, entrance and exits, sidewalks, ramps, curbs," and various other exterior elements. Fred's was responsible for maintenance of the interior of the premises. Wildevco claimed it periodically inspected the parking lot and parking lot lighting but never conducted or hired anyone to conduct an inspection around the perimeter of the store to look for tripping hazards. However, Barber acknowledged that if an inspection had taken place, it would have been "vis[ible] to the naked eye" that an elevation change in the sidewalk existed and was not painted yellow.

Five years after the Fred's store opened, on March 10, 2010, Martha Fountain went to the Williston Fred's to purchase light bulbs. It was a sunny day, and as she approached the store entrance around noon, her toe caught the sloped portion of the ramp at the entrance of the store, causing her to trip and fall. Ms. Fountain hit her head and hand on the glass door and fell to her knees. She sustained serious injuries to her hand, wrist, and arm and has undergone five surgeries to alleviate her pain and injuries. Ms. Fountain also suffered nerve damage in her shoulder and neck from the blow to her head, and she continues to have problems lifting and gripping things due to numbness and neuropathy in her right hand, which is her predominant hand.

In May 2010, Ms. Fountain and her husband filed a premises liability suit against Fred's and Wildevco, alleging Respondents breached their duty to invitees by failing to maintain and inspect the premises and failing to discover and make safe or warn of unreasonable risks. Ms. Fountain sought to recover her medical expenses and lost wages, and her husband filed a loss of consortium claim. The Fountains did not pursue a construction defect claim against Tippins-Polk.

In defending the Fountains' premises liability lawsuit, Wildevco and Fred's filed third-party claims against Tippins-Polk for equitable indemnification, negligence, breach of contract, and breach of warranty, arguing Tippins-Polk improperly constructed the sidewalk and that the defective construction was the sole proximate cause of Ms. Fountain's injuries. The case was set for a date certain trial in March 2016. On the eve of trial, Wildevco and Fred's settled with the Fountains for $290,000, with Wildevco paying $250,000 and Fred's paying $40,000. The third-party claim was continued, and in June 2016, a bench trial was held solely on Fred's and Wildevco's equitable indemnification claims against Tippins-Polk.

The general theory of the third-party claim was that Tippins-Polk deviated from the site plans and improperly constructed the entrance curbing, which was the sole proximate cause of Ms. Fountain's injuries. In other words, Fred's and Wildevco sought to re-classify the dangerous condition as "improper construction" rather than an unsafe elevation change in a premises liability context, which was the basis of Ms. Fountain's lawsuit. Essential to Respondents' position is the notion that they did not breach any duty to Ms. Fountain to inspect the premises and correct or warn of any potential trip hazards.

At the conclusion of the trial, the court noted there were "potential areas of confusion" between the various construction drawings but ultimately concluded Tippins-Polk deviated from the site plans in building an elevated sidewalk with a sloped curb ramp. As to the relevant elements of equitable indemnification, the trial court found a special relationship existed between Fred's and Tippins-Polk "based on Tippins-Polk's agreement to construct a facility for a Fred's retail store with knowledge that the Fred's facility would be open for business to the public, as well as its selection as general contractor based on its prior construction of at least one other Fred's store." Relying exclusively on construction defect cases rather than cases involving premises liability or equitable indemnification, the trial court further concluded neither Wildevco nor Fred's breached any duty owed to Ms. Fountain regarding inspection and maintenance because "the defects were such that could not reasonably have been discovered" by Wildevco or Fred's.[1] Thus, the trial

---

[1] The trial court's findings were not based on premises liability cases, but were based on the following construction defect cases, despite Respondents' construction defect claims having been abandoned prior to trial. *See Fields v. J. Haynes Waters Builders, Inc.*, 376 S.C. 545, 658 S.E.2d 80 (2008) (involving claims of negligence, breach of warranty, and strict liability against builder for damages caused by installation of defective stucco); *Kennedy v. Columbia Lumber & Mfg. Co.*, 299 S.C. 335, 384 S.E.2d 730 (1989) (involving breach of implied

court concluded equitable indemnification was appropriate.

The court of appeals affirmed, finding "ample evidence of a special relationship" between Tippins-Polk and Fred's and concluding neither Fred's nor Wildevco were at fault in the underlying action. *Fountain v. Fred's, Inc.*, 429 S.C. 533, 839 S.E.2d 475 (2020). Following the court of appeals' denial of Tippins-Polk's petition for rehearing, this Court granted Tippins-Polk's petition for a writ of certiorari.

## II.

In an action at equity, tried by a judge alone, this Court's standard of review is de novo. *Lewis v. Lewis*, 392 S.C. 381, 385–86, 709 S.E.2d 650, 651–52 (2011). In short, "[w]e have jurisdiction in appeals in equity to find the facts in accord with our view of the preponderance or greater weight of the evidence, in the absence of verdict by jury." *Gilbert v. McLeod Infirmary*, 219 S.C. 174, 184, 64 S.E.2d 524, 528 (1951).

"South Carolina has long recognized the principle of equitable indemnification." *Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp.*, 336 S.C. 53, 60, 518 S.E.2d 301, 305 (Ct. App. 1999). "Indemnity is that form of compensation in which a first party is liable to pay a second party for a loss or damage the second party incurs to a third party." *Id.* (citation omitted). "A right to indemnity may arise by contract (express or implied) or by operation of law as a matter of equity between the first and second party." *Id.* (citation omitted).

"Traditionally, courts have allowed equitable indemnity in cases of imputed fault or where some special relationship exists between the first and second parties." *Id.* An additional element is the absence of fault by the party seeking equitable indemnification. A party is not entitled to equitable indemnification if any "negligence of his own has joined in causing the injury." *Id.* (citation omitted).

Thus, after demonstrating a sufficient relationship exists, a party seeking equitable indemnification (here, Fred's and Wildevco) must prove: "(1) the indemnity defendant ([Tippins-Polk]) is at fault in causing the damages of the third party ([the

---

warranty of habitability); *Lane v. Trenholm Bldg. Co.*, 267 S.C. 497, 229 S.E.2d 728 (1976) (affirming a verdict against a septic tank vendor and finding an implied warranty of fitness for use "springs from the sale itself"); *Rutledge v. Dodenhoff*, 254 S.C. 407, 175 S.E.2d 792 (1970) (affirming a verdict in favor of plaintiffs on breach of implied warranty claim regarding the improper installation of a septic tank).

Fountains]); (2) the plaintiff has no fault for those damages; and (3) the plaintiff incurred expenses that were necessary to protect his interest in defending the third party's claim." *Inglese v. Beal*, 403 S.C. 290, 299, 742 S.E.2d 687, 692 (Ct. App. 2013).

Here, Tippins-Polk argues the court of appeals erred with respect to two of these elements. First, Tippins-Polk argues it was error to affirm the trial court's finding that a special relationship existed between it and Fred's. Secondly, Tippins-Polk argues that it was error to affirm the finding that Wildevco and Fred's were without fault. We address each claim in turn.

## A. Special Relationship

Tippins-Polk argues the court of appeals erred in finding a special relationship existed between it and Fred's. In support of its argument, Tippins-Polk relies heavily upon *Rock Hill Telephone Co. v. Globe Communications, Inc.*, 363 S.C. 385, 611 S.E.2d 235 (2005), in which this Court held no special relationship existed between a utility and a subcontractor hired by an independent contractor.

As a matter of equity, a party is entitled to indemnity if "the relation between the parties is such that either in law or in equity there is an obligation on one party to indemnify the other, as where one person is exposed to liability by the wrongful act of another in which he does not join." *Stuck v. Pioneer Logging Mach., Inc.*, 279 S.C. 22, 24, 301 S.E.2d 552, 553 (1983) (citations omitted). "Traditionally, the courts have allowed equitable indemnity in cases of imputed fault or where some special relationship exists between the first and second parties." *Inglese*, 403 S.C. at 299, 742 S.E.2d at 691 (citation omitted).

Here, the trial court and court of appeals found the connection between Fred's and Tippins-Polk was established because Tippins-Polk knew the commercial space it constructed would be leased to Fred's and open to the public and because Tippins-Polk had been the general contractor in several other unrelated construction projects for Fred's stores.[2] The court of appeals also construed certain testimony in the record as establishing that Tippins-Polk owned another location that was also leased to Fred's. Although this may be some evidence of a course of dealing between Fred's and Tippins-Polk, it is a close question whether the evidence in this record is adequate to support a finding of a special relationship. However, we need not resolve that issue. Even assuming a special relationship existed between Fred's

---

[2] There is no indication in the record that Tippins-Polk and Fred's ever contracted with one another directly.

and Tippins-Polk, we find Respondents manifestly failed to demonstrate their own absence of fault and therefore were not entitled to equitable indemnification.

## B. Without Fault

As previously noted, a party may be entitled to equitable indemnification only if "no personal negligence of his own has joined in causing the injury." *Vermeer Carolina's, Inc.*, 336 S.C. at 60, 518 S.E.2d at 305 (citation omitted). "Equitable indemnity cases involve a fact pattern in which the first party is at fault, but the second party is not. If the second party is also at fault, he comes to court without equity and has no right to indemnity." *Town of Winnsboro v. Wiedeman-Singleton, Inc.*, 303 S.C. 52, 57–58, 398 S.E.2d 500, 503 (Ct. App. 1990), *aff'd*, 307 S.C. 128, 414 S.E.2d 118 (1992).

Tippins-Polk argues the court of appeals erred in affirming the finding that Respondents were without fault. We agree. For Respondents to prove they were without fault and thus deserving of equitable indemnity, Respondents were required to demonstrate that they had not breached any duty they owed as landowner and shopkeeper to Ms. Fountain as a business invitee. While we understand Respondents' desire that we only look to Tippins-Polk's fault under construction defect law, we are constrained to analyze the "without fault" element through the lens of premises liability law.

"The nature and scope of duty in a premises liability action, if any, is determined based upon the status or classification of the person injured at the time of his or her injury." *Singleton v. Sherer*, 377 S.C. 185, 200, 659 S.E.2d 196, 204 (Ct. App. 2008) (citing *Sims v. Giles*, 343 S.C. 708, 715, 541 S.E.2d 857, 861 (Ct. App. 2001)). "An invitee is a person who enters onto the property of another at the express or implied invitation of the property owner." *Sims*, 343 S.C. at 716, 541 S.E.2d at 861–62 (quoting *Goode v. St. Stephens United Methodist Church,* 329 S.C. 433, 441, 494 S.E.2d 827, 831 (Ct. App. 1997)). "However, a possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Hancock v. Mid-S. Mgmt. Co.*, 381 S.C. 326, 331, 673 S.E.2d 801, 803 (2009) (citing *Callander v. Charleston Doughnut Corp.*, 305 S.C. 123, 126, 406 S.E.2d 361, 362 (1991) (adopting Restatement (Second) of Torts § 343A (1965))).

"The owner of property owes to an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety, and is liable for injuries resulting from the breach of such duty." *Sims*, 343 S.C. at 718, 541 S.E.2d at 863 (citing

*Larimore v. Carolina Power & Light*, 340 S.C. 438, 531 S.E.2d 535 (Ct. App. 2000)).  "The landowner has a duty to warn an invitee only of latent or hidden dangers of which the landowner has knowledge or should have knowledge." *Id.* (citing *Callander*, 305 S.C. 123, 406 S.E.2d 361).  Like a landowner, a merchant also owes its customers "the duty to exercise ordinary care to keep his premises in a reasonably safe condition." *Young v. Meeting St. Piggly Wiggly*, 288 S.C. 508, 510, 343 S.E.2d 636, 637 (Ct. App. 1986) (citations omitted).  Thus, as a matter of law, both Fred's and Wildevco owed a duty of care to Ms. Fountain, as an invitee, to keep the premises reasonably safe and warn of any unreasonable dangers that could not be remedied.

Indeed, it is in this context that Fred's and Wildevco were sued for their own independent negligence—not vicariously for the negligence of Tippins-Polk.  Even assuming Tippins-Polk improperly constructed the ramp and the ramp was a proximate cause of Ms. Fountain's injuries, both the improper construction and Respondents' failure to inspect and warn could have proximately caused Ms. Fountain's injuries.  *See Hughes v. Child. Clinic, P.A.*, 269 S.C. 389, 398, 237 S.E.2d 753, 757 (1977) ("When we speak of proximate cause, we are not referring to the 'sole cause.'  In order to establish actionable negligence, the plaintiff is required only to prove that the negligence on the part of the defendant was at least one of the proximate, concurring causes of his injury.").

Thus, to be entitled to equitable indemnity on their cross-claim against Tippins-Polk, Fred's and Wildevco were required to show not just that Tippins-Polk's construction of the ramp was a proximate cause of Ms. Fountain's injuries but also that Respondents' failure to warn of or remedy the unsafe condition was *not* a proximate cause.  *See Wiedeman-Singleton, Inc.*, 303 S.C. at 57–58, 398 S.E.2d at 503 (observing that "[i]f the second party is also at fault, he comes to court without equity and has no right to indemnity"); *see also Hughes*, 269 S.C. at 399, 237 S.E.2d at 757 (finding defendant medical provider owed patients a duty to inspect the premises in order to discover dangerous conditions and take adequate safeguards to prevent injuries).

Although the trial court concluded Fred's conducted periodic inspections, the evidence to support this finding is not included in the record on appeal, and under our de novo standard of review, we are unable to reach the same conclusion.  *See* Rule 210(h), SCACR (providing an appellate court will not consider any fact which does not appear in the record on appeal).  As to Wildevco, the evidence at trial is clear that Wildevco *never* conducted an inspection of the perimeter of the Fred's store to look for tripping hazards, although Barber admitted that if an

inspection had occurred, the uneven surface would have been visible "to the naked eye."

Although a change in elevation in a walking surface may constitute an open-and-obvious condition of which a landowner or merchant has no duty to warn,[3] "an owner is liable for injuries to an invitee, despite an open and obvious defect, if the owner should anticipate that the invitee will nevertheless encounter the condition, or that the invitee is likely to be distracted." *Callander*, 305 S.C. at 125–26, 406 S.E.2d at 362–63 (finding error in charging the jury on "latent defect" where a reasonably careful inspection would have revealed the danger and holding shopkeeper nevertheless may be required to warn the invitee of the open-and-obvious risk if "the invitee's attention may be distracted[] so that he will not discover what is obvious" (citation omitted)).

Here, as in *Callander*, a reasonable inspection of the concrete entrance would have revealed the curbing elevation change. Accordingly, it was error for the trial court to find the dangerous condition was latent, and particularly to rely on inapposite construction defect concepts in doing so. The question then arises whether Fred's and Wildevco had a duty to warn of or remedy the uneven surface.

Fall safety expert Steve Hunt testified at trial that any elevation change under four inches in height, such as the sloped portion of the curb ramp, is difficult to see and can constitute a tripping hazard. Hunt further explained:

> [I]t's more important here [at the entrance] than it is there [further down the sidewalk]. Why? Because we're walking into the entranceway of a store, where you [have] got doors, where you [have] got people coming and going and your eyes are focused on what you're going to be doing when you come in that door, not looking down from your field of vision.

Hunt testified that painting a curb yellow is a means of warning customers of the elevation change and acknowledged that although warnings do not always prevent accidents from occurring, painting a curb "can make a difference." Further, Ms. Fountain testified that at the time of her fall, she was looking ahead and not down at her feet and that if the raised curbing at the ramp had been painted yellow, she would have perceived the elevation change.

---

[3] *See Hancock*, 381 S.C. at 331, 673 S.E.2d at 803 (noting an uneven surface in a parking lot may constitute an open-and-obvious danger).

There is no evidence in the record that either Fred's or Wildevco warned of or attempted to remedy the trip hazard identified by their own safety expert, despite the condition existing for almost five years before the accident occurred. *See Anderson v. Winn-Dixie Greenville, Inc.*, 257 S.C. 75, 77, 184 S.E.2d 77, 77 (1971) ("The defendant will be charged with constructive notice whenever it appears that the condition has existed for such length of time prior to the injury that, under existing circumstances, he should have discovered and remedied it in the exercise of due care."). In light of this failure of proof, we find it was error to conclude Fred's and Wildevco were without fault. Accordingly, we reverse and find Fred's and Wildevco were not entitled to equitable indemnification.

### III.

In sum, Fred's and Wildevco failed to establish they were without fault in the Fountains' premises liability action. As a result, we reverse the court of appeals' finding that Fred's and Wildevco were without fault.[4]

**REVERSED**

**BEATTY, C.J., HEARN, FEW and JAMES, JJ., concur.**

---

[4] Because of our disposition, the court of appeals' decision to remand the matter to the circuit court for further proceedings regarding attorney's fees and costs is vacated.